IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Mrs. Darnell Franklin,<br><br>      Plaintiff,<br><br>    v.<br><br>Winyah Grainger, PPM, Michelle Swoyer-Warehouse Supervisor (in her official and individual capacity), Al Wilson-Supervisor (in his official and individual capacity), Ged Moore- Plant Manager (in his official and individual capacity), and John Beard-Project Manager (in his official and individual capacity),<br>      Defendants. | C/A No.:<br><br>COMPLAINT<br>Jury Trial Requested |

Plaintiff Darnell Franklin, by and through her undersigned counsel, asserts the following Causes of Action of Race Discrimination/Racially Hostile Work Environment in Violation of 42 U.S.C. § 1981, Tortious Interference with a Contractual Relationship, and Civil Conspiracy as to Defendants Winyah Grainger, PPM, Michelle Swoyer-Warehouse Supervisor, Al Wilson-Supervisor, Ged Moore-Plant Manager, and John Beard-Project Manager, in their official and individual capacities, based on the following assertions.

**ADMINISTRATIVE CHARGE**

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below.

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e (5), this being a proceeding to enforce rights and remedies secured

under 42 U.S.C. Section 1981 and other Federal statutes. This Court also has pendant and supplementary jurisdiction over so much of this action as is based on state law.

2. Venue is proper in the Florence Division, because the causes of action arose therein, the acts and practices complained of occurred there, and it is where Defendants do business and may be found.

## PARTIES

3. Plaintiff is an African American female and a citizen of the United States. The Plaintiff resides in Horry County, South Carolina, within this Judicial District.

4. Defendant Winyah Grainger is an organization conducting business and operations in the State of South Carolina. The Defendant is legally organized and exists under the Code of Laws of the State of South Carolina.

5. Defendant PPM is an organization conducting business and operations in the State of South Carolina. The Defendant is legally organized and exists under the Code of Laws of the State of South Carolina.

6. Upon information and belief, Defendant Swoyer is a citizen of South Carolina and resides in this Judicial District.

7. Upon information and belief, Defendant Wilson is a citizen of South Carolina and resides in this Judicial District.

8. Upon information and belief, Defendant Moore is a citizen of South Carolina and resides in this Judicial District.

9. Upon information and belief, Defendant Beard is a citizen of South Carolina and resides in this Judicial District.

**FACTS**

10. Plaintiff is a 57-year-old African American female who was employed with the Defendant PPM An Encor Company for 6.5 years beginning on April 29, 2019, until her untimely termination on January 29, 2025. Plaintiff tirelessly worked for the Defendant to restore the company to its proper efficiency and to ensure quality utility.

11. The Plaintiff prided herself on being an exemplary employee. In fact, Plaintiff was applauded for her and her team's hard work and due diligence in restoring the company back to its proper efficiency and potential.

12. Plaintiff worked for PPM for a year and a half until June of 2020, when Plaintiff was asked to transfer to the Winyah Grainger site under PPM leadership to be the Operations Supervisor.

13. During this time, Plaintiff never received any disciplinary action or complaints concerning her work ethic or performance.

14. Under the guidance and leadership of Richie Mill and William Valentine, Plaintiff continued to have a great relationship with her co-workers for the next two years.

15. However, it was during this time that Plaintiff noticed the undermining of her authority and directives by Defendant Michelle Swoyer, who was not Plaintiff's direct supervisor. In fact, Plaintiff's direct supervisors, Richie Mill and William Valentine, both Winyah Grainger Managers, had a great working relationship with Plaintiff and respected Plaintiff's authority as an Operations Supervisor.

16. Unfortunately, in 2021, Plaintiff's work environment took a drastic turn when Defendant Swoyer became Plaintiff's direct supervisor. The undermining of Plaintiff's authority and position reached an all-new height, to where Defendant Swoyer did everything possible to encourage Plaintiff to quit, including failing to raise Plaintiff's pay despite promising Plaintiff such a $30 raise every 3-4 months notwithstanding the fact that Plaintiff provided

3

    Human Resource assistance to five different departments on site as an Operations Supervisor, although all five departments were managed by Winyah Grainger Managers who supervised such contracted workers. In fact, Defendant Swoyer's critiques of Plaintiff grew to the point that Plaintiff was continuously met with complaints from Defendant Swoyer about where Plaintiff parked her car on a daily basis.

17. Plaintiff was constantly exacerbated by continuous phone calls and emails from Defendant Swoyer complaining or correcting Plaintiff's actions.

18. On several occasions, Plaintiff complained to the Plant Manager, Defendants Ged Moore, and Project Manager John Beard, about Defendant Swoyer's behavior to no avail.

19. Plaintiff was consistently met with false promises that her situation with Defendant Swoyer would be looked into, but was deliberately ignored.

20. Plaintiff's complaints and concerns began to fall on deaf ears, leaving Plaintiff to endure the consistent critiques and ridicule of Defendant Swoyer.

21. Plaintiff asserts that her complaints were never answered, as this was a pretextual maneuver by Defendants Swoyer, Wilson, and Moore to force Plaintiff to quit or to cause Plaintiff's termination.

22. In a close temporal proximity to Plaintiff's complaints and concerns about Defendant Swoyer, Plaintiff's harassment by Defendant Swoyer grew exponentially to the point where Plaintiff was forced to park across the street to walk to her office, which was a directive orchestrated by Defendant Swoyer.

23. Furthermore, Plaintiff's office of three years, in which she held her safety meetings for her staff and visiting supervisors, was abruptly moved to a storage area that was given to her to utilize as an office, which could accommodate 15-20 personnel comfortably. Despite such

unsafe and hazardous conditions, Plaintiff made her office space into one of the most efficient offices on site; however, she was consistently met with complaints about the appearance of such office.

24. To Plaintiff's dismay, Plaintiff was relocated to a storage shed that the Defendants made into an office space. Plaintiff's office was eventually moved several times due to safety precautions and trip hazards. Furthermore, the noise level in the area was extremely loud, and her office space could only accommodate 3-4 personnel at a time compared to her previous office space. This significantly inhibited Plaintiff's ability to perform her duties to hold meetings on a regular basis with fellow personnel, therefore, creating undue stress and anxiety for Plaintiff to meet with her team members. As compared to Plaintiff's Caucasian counterparts, who were given secure and safe locations for office spaces, Plaintiff was forced to endure a cramped and unsafe office space until her untimely termination.

25. Plaintiff asserts Defendant Swoyer's actions were deliberate and orchestrated to frustrate Plaintiff to the point of forcing her resignation or ultimately her termination.

26. On the morning of January 29, 2025, Plaintiff spoke with Defendant Moore about the constant harassment by Defendant Swoyer concerning Plaintiff's parking at the facility. Plaintiff also inquired about the growth and success of the company and how her current performance was as an Operations Supervisor. Plaintiff asserts she was informed that her performance was great, that there were no complaints about her or her performance, and that Defendant Moore would inquire into the parking issues of Plaintiff, not knowing that Defendants Swoyer, Moore, and Wilson were already conspiring to terminate Plaintiff that same day.

27. To Plaintiff's shock and dismay, on January 29, 2025, Plaintiff was informed that Defendants Swoyer and Wilson had orchestrated a meeting along with Defendant Project Manager John Beard to state their desire to terminate Plaintiff's employment, all unbeknownst to Plaintiff, therefore, establishing Defendants' deliberate and pretextual design to conspire and terminate Plaintiff.

28. Plaintiff was later abruptly informed by Defendant Beard that she was terminated for performance issues, despite there being no prior discussions of poor performance or disciplinary documentation with Plaintiff. In fact, just that same day, Plaintiff was informed by Defendant Moore that she had a stellar performance and that any issues she had with Defendant Swoyer would be investigated.

29. Defendant Beard also informed Plaintiff that Defendant Swoyer and Wilson's reasoning for terminating Plaintiff was that they were not pleased with Plaintiff's performance and "wanted to try someone else".

30. Plaintiff asserts that her termination was pretextually orchestrated by Defendants Swoyer, Wilson, Moore, and Beard to replace Plaintiff with a Caucasian female, Amanda Parks, whom Plaintiff introduced to the department and did not have the same experience or expertise as Plaintiff for the position of Operations Supervisor.

31. At no point did Plaintiff have any performance issues or write-ups to facilitate her termination.

32. Therefore, Plaintiff asserts that her termination was based upon her Race in violation of 42 U.S.C. § 1981.

**FIRST CAUSE OF ACTION**

*Race Discrimination and Racially Hostile Work Environment in violation of 42 U.S.C Section 1981, against Defendants Winyah Grainger, PPM, Michelle Swoyer (in her official capacity), Al Wilson (in his official capacity), Ged Moore (in his official capacity), and John Beard (in his official capacity).*

33. Plaintiff reiterates and fully incorporates each and every assertion set forth above as if repeated verbatim herein.

34. Plaintiff is a member of a protected class on the basis of her Race (African American).

35. Plaintiff alleges that Defendants Winyah Grainger and PPM, through its agents Defendants Swoyer, Wilson, Moore, and Beard, initiated discriminatory practices against Plaintiff based upon her Race, including but not limited to:

    - Undermining Plaintiff's initiatives and directives as an Operations Supervisor.

    - Placing Plaintiff in a hostile and unsafe work environment on numerous occasions, which denounced Plaintiff's authority and initiatives as an Operations Supervisor.

    - Subjecting Plaintiff to a Racially Hostile Work Environment that was so severe that Plaintiff's work environment was drastically changed upon the arrival of Defendant Swoyer.

    - Failing to address Plaintiff's complaints about such a racially hostile work environment when Defendants, such as Ged Moore and John Beard, were made aware of it on multiple occasions.

36. Plaintiff was subjected to Race Discrimination and a Racially Hostile Work Environment on the basis of her Race, resulting from the severe and pervasive hostile treatment by Defendant

Swoyer, which Defendants Wilson, Moore, and Beard condoned in violation of 42 U.S.C Section 1981.

37. Winyah Grainger, by and through its agents, began a pattern and practice of enabling Defendant Swoyer's discrimination against Plaintiff and disregarding Plaintiff's complaints, which Defendant Moore and Beard were aware of and were put on notice about.

38. Upon information and belief, Plaintiff's Caucasian colleagues of similar title, responsibility, and authority were not forced to be subjected to such racial hostility and undermining of their directives as Plaintiff.

39. Furthermore, none of Plaintiff's Caucasian colleagues of similar title, responsibility, and authority were not subjected to such a hostile and unsafe work environment, and Defendants Winyah Grainger and PPM made no efforts to protect Plaintiff from such an environment orchestrated by Defendants Swoyer, Wilson, Moore, and Beard.

40. Defendants Winyah Grainger and PPM, through their agents, were aware of Plaintiff's complaints about the racially hostile work environment Plaintiff had to endure at the hands of Defendant Swoyer. Moreover, Defendants Winyah Grainger and PPM's policies and procedures, for which Plaintiff relied, provided assurances that Plaintiff's concerns would be addressed. However, Defendants Winyah Grainger and PPM, as well as Defendants Moore and Beard, failed to follow through on those promises in any substantive or meaningful way.

41. Further, Plaintiff alleges that Defendants Winyah Grainger and PPM, through their agents Swoyer, Wilson, Moore, and Beard, initiated discriminatory and hostile practices against Plaintiff that were reckless and wanton, including:

- Continuing to permit the deliberate undermining of Plaintiff's authority at the hands of Defendant Swoyer.

- By continuing to allow the Defendant's racially hostile, usurpatory, and egregious practices while Plaintiff's similarly situated Caucasian colleagues were exempt from such treatment.

- Failing to address Plaintiff's concerns and complaints about Defendant Swoyer, whom Defendants were actively put on notice about, including Defendant Swoyer's deliberate undermining of Plaintiff's authority.

- For terminating Plaintiff without just cause or reason for such termination, including failing to document or meet with Plaintiff to demonstrate Plaintiff's "poor performance".

42. By knowingly allowing such blatant and pervasive racial hostility and discrimination to exist, Defendants Winyah Grainger and PPM effectively condoned the same

43. But for Defendants' conduct, by and through their agents Swoyer, Wilson, Moore, and Beard, Plaintiff would not have been forced to endure Race Discrimination, a Racially Hostile Work Environment, and ultimately her untimely termination.

44. By failing to protect Plaintiff from Defendants' discrimination and racially motivated hostility, Defendants Winyah Grainger and PPM acted with malice and reckless indifference to Plaintiff's federally protected rights set out under 42 U.S.C. § 2000, et seq., Section 1981.

45. As a result of Defendants' racially discriminatory conduct accompanied by Plaintiff's continuous and ongoing exposure to the same, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff further believes she should be awarded actual and punitive damages against Defendants due to their unlawful and discriminatory treatment of Plaintiff under Section 1981.

## SECOND CAUSE OF ACTION

*Tortious Interference with a Contractual Relationship against Defendants Michelle Swoyer (in her individual capacity), Al Wilson (in his individual capacity), Ged Moore (in his individual capacity), and John Beard (in his individual capacity).*

46. Plaintiff reiterates and fully incorporates each and every assertion set forth above as if repeated verbatim herein.

47. A valid and enforceable contract existed between Plaintiff and PPM. Plaintiff's contract began on August 10, 2020, with Plaintiff's promotion with PPM as an Operations Supervisor at the Winyah Grainger coal site.

48. Defendant knew of the existence of Plaintiff's contract as Defendant presented Plaintiff with such offer in writing on August 10, 2020, and Plaintiff accepted and performed all of the duties and responsibilities required of her in her new position as Operations Supervisor.

49. Defendant intentionally and unjustifiably interfered with Plaintiff's contract by disrupting Plaintiff's performance in her position as an Operations Supervisor by actively interfering with Plaintiff's job duties and responsibilities, changing Plaintiff's work environment on numerous occasions, and fostering a racially hostile work environment at the hands of Defendant Michelle Swoyer, which Defendants Moore and Beard were made aware of. Furthermore, Defendants Swoyer, Wilson, and Beard deliberately orchestrated the pretextual termination of Plaintiff for unfounded "performance issues" which Plaintiff was never made aware of or was given a Performance Improvement Plan to correct such issues.

50. Defendant's interference caused a breach of Plaintiff's contract with PPG, specifically Defendants Swoyer, Wilson, Moore, and Beard, who otherwise made Plaintiff's performance

of her contract impossible through their deliberately orchestrated actions to frustrate Plaintiff's job duties and to create a pretextual reason for Plaintiff's termination.

51. Plaintiff suffered damages as a direct and proximate result of Defendant's interference, including lost profits, additional costs, and reputational harm.

## THIRD CAUSE OF ACTION

*Civil Conspiracy as to Defendants Michelle Swoyer (in her individual capacity), Al Wilson (in his individual capacity), Ged Moore (in his individual capacity), and John Beard (in his individual capacity).*

52. Plaintiff reiterates and fully incorporates each and every assertion set forth above as if repeated verbatim herein.

53. The Plaintiff has been targeted by a deliberate design of Defendants Swoyer, Wilson, Moore, and Beard in a conspiracy to ensure the creation of a racially hostile work environment for Plaintiff, the termination of Plaintiff's employment, and the willful disregard of her contractual rights. Defendants deliberately conspired to inflict Race Discrimination upon Plaintiff to create a racially hostile work environment for Plaintiff, despite none of Plaintiff's similarly situated Caucasian counterparts having to experience such treatment.

54. From 2021, with the arrival of Defendant Swoyer until Plaintiff's untimely termination on January 29, 2025, Defendants Swoyer, Wilson, Moore, and Beard planned and conspired with each other to orchestrate Plaintiff's termination by pretextually creating a racially hostile work environment for Plaintiff through harassment, undermining Plaintiff's supervisory position, and pretextually creating a fictitious reason for Plaintiff's termination concerning Plaintiff's job performance.

55. Defendants Moore and Beard were aware of Plaintiff's concerns about the racially hostile

work environment Plaintiff was subjected to through Defendant Swoyer's actions, as Plaintiff complained of such behavior numerous times. Still, Defendant Moore and Beard deliberately ignored Plaintiff's concerns.

56. Defendants Swoyer, Wilson, and Beard conspired amongst each other to make fraudulent statements concerning Plaintiff's work performance when her supervisor continuously told her that her performance was great. Furthermore, the deliberate actions of Defendant Swoyer consistently frustrated Plaintiff's work environment despite Plaintiff's best efforts to perform her job efficiently.

57. The natural consequence of the Defendants' combined actions caused special damages to Plaintiff apart from any other damages placed herein. Specifically, the acts in the furtherance of this conspiracy, as alleged, have and will continue to cause Plaintiff special damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and further non-pecuniary losses.

58. Accordingly, due to the acts of Defendant and its agents, Plaintiff is entitled to injunctive relief and civil damages from the Defendant.

## **PRAYER FOR RELIEF**

1. **WHEREFORE**, Plaintiff prays that this Honorable Court declares that the Defendants Winyah Grainger, PPM, Michelle Swoyer-Warehouse Supervisor, Al Wilson-Supervisor, Ged Moore- Plant Manager, and John Beard-Project Manager, actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

    a. Declaring the actions complained of herein illegal;

b. In favor of Plaintiff and against the Individual Defendants for all causes of action herein alleged in an amount which is fair, just, and reasonable, and for actual, compensatory, special, and punitive damages;

c. In favor of Plaintiff and against the Defendants for all causes of action in an amount which is fair, just, and reasonable;

d. Issuing an injunction enjoining Defendants, their Agents, Employees, Successors, Attorneys and those acting in concert or participation with Defendants, and at their direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of 42 U.S.C. Section 1981 (Race Discrimination/ Racially Hostile Work Environment), Tortious Interference with a Contractual Relationship and Civil Conspiracy and the common laws of the State of South Carolina;

e. Awarding Plaintiff actual and compensatory damages for each Cause of Action contained herein as appropriate, which the jury should find appropriate as a result of Defendants' unlawful discriminatory actions taken as a result of Plaintiff's Race and other pled causes of action, including: physical and mental anguish, pain and suffering, harm to Plaintiff's economic opportunities (present and future), any back pay, front pay and future earnings with cost of living adjustments, prejudgment interest, fringe benefits and retirement benefits;

f. Awarding Plaintiff his costs and expenses in this action, including reasonable Attorney's fees, and other litigation expenses; and

g. Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

Respectfully Submitted,

   s/Donald Gist
Donald Gist (13098)
**GIST LAW FIRM, P.A.**
4400 North Main Street
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

***Attorney for Plaintiff***

December 18, 2025

14